DYESS v. LANDRY

—

(February 2, 1931. Opinion and Decree.)

—

F. A. Middleton, of New Orleans, attorney for plaintiff, appellee.

Gordon Boswell, of New Orleans, attorney for defendant, appellant.

HIGGINS, J. This is a suit to recover damages for personal injuries and property loss as a result of an automobile collision between the defendant's car and an automobile in which plaintiff was riding as a guest, which occurred in the city of New Orleans near the Seventeenth Street Canal bridge about midnight November 23, 1929. While the defendant denied liability, on the trial of the case there was no evidence offered to rebut the testimony of the plaintiff's witnesses, and the lower court found that the accident was caused through the negligence of the defendant's minor son, who was operating the defendant's car at the time of the accident. Counsel for defendant, neither in his brief nor in his argument at the bar, questioned the defendant's liability, but contended that the amount awarded by the trial judge was excessive. Plaintiff was awarded below the sum of $635 for damages to clothing, medical expenses, and loss of salary, and the sum of $3,500 for pain and suffering, physical injuries, and permanent disfigurement from a scar on her right cheek.

As the record clearly establishes the defendant's liability, which, as a matter of fact, he practically concedes, we shall pass to a discussion of whether the amount awarded the plaintiff was sufficiently proven, and, if so, whether manifestly excessive.

The testimony of plaintiff as to the cost of drugs, serum, anæsthetic, hospital fees, and expenses of trained nurses is corroborated by the hospital bill. Counsel complains of the allowance of the sum of $200 for damage to plaintiff's clothing, which is alleged to have been ruined by blood stains and in having been cut and torn in the accident. Plaintiff's testimony was that the value of the clothing destroyed was approximately $200. As to this item she was not cross-examined, and no evidence was offered to rebut her statement. A similar complaint is registered against the claim of $250 for loss of earnings as resident trained nurse for a local hospital for two months, the period of her incapacity. Again we say there is nothing ot contradict her evidence in this respect, and the amount appears to be reasonable. We therefore find that the amount of $635 awarded for these losses was sufficiently proven and is not excessive.

As to the items of pain, suffering, shock, nervousness, physical injuries, and permanent disfigurement, the record shows that plaintiff is an attractive young lady, 23 years of age, unmarried, and a trained nurse, enjoying previous excellent health. On the night in question she was riding in the automobile of Dr. L. R. Roeling, who is a dentist with offices in New Orleans. They both testified that the automobile in which they were riding was struck a terrific blow by the defendant's car, and that both of them were knocked unconscious. Plaintiff was removed from the automobile to a taxicab and taken to the French Hospital, where her right cheek, which was severely lacerated, was sutured, serum injected, and her other injuries given attention by Dr. Bates. Dr. M. Q. Miller, who attended her from the morning following her injury until her recovery, described her injuries as follows:

"A lacerated wound of the right side of the face which had previously been sutured (the doctor meant that the wound had been sutured by another physician previous to the arrival of Dr. Miller), and she had a laceration of the nose and a small laceration of the left side of the cheek and a laceration of the tongue and a laceration of the lower lip, brush burns of the knees and a contusion of the neck and from the history of the case, a concussion of the brain."

As to the concussion of the brain Dr. Miller said:

"Q. If the effects of the concussion disappeared in 48 hours, why did Miss Dyess have to remain in bed for some ten days in the hospital?

"A. After a head injury, it is not good policy to let the patient up under ten or fifteen or twenty days. The brain is a delicate organ, and when it receives an injury, the patients have to remain at rest for a long period of time.

"Q. That was a precautionary measure, wasn't it, keeping Miss Dyess in bed for ten days?

"A. She had an injury to her back, and this concussion, and I don't think that she should have been allowed to walk under ten or fifteen days."

The plaintiff's testimony corroborated the doctor's, and she further testified as follows:

"Well, I suffered severe pains in the head, in the abdomen and a blow in the neck and a blow on the knees and in my back and in the laceration of the face and a good deal from the laceration in the tongue and the lip, especially so, because I wasn't able to swallow for about eight days, nothing except water and liquids."

"Q. Were those pains mild?

"A. No, they were very severe. I was extremely nervous and am until yet, not as

much as I was at first immediately following the accident.

"Q. For six or eight weeks after the accident you were extremely nervous?

"A. Yes.

"Q. You say you still suffer from some nervousness?

"A. Yes."

Dr. Miller also testified that the scar on plaintiff's cheek was about two and one-quarter inches in length and about a sixteenth of an inch in width, and that it is permanent.

The trial judge, in his reasons for judgment stated:

"The plaintiff is a very comely young lady, only twenty-three years of age and unmarried. The scar upon her right cheek appears as shown upon the photograph introduced in evidence and is very noticeable even at a distance of from thirty to fifty feet. There is a discoloration of the skin and the scarred portion of the flesh of the cheek bulges slightly. Dr. Miller testified that the scar is permanent but that its appearance might be improved by plastic surgery, which, of course, would involve an additional operation together with the expense and suffering incident thereto."

The record further shows that the plaintiff was confined to her bed in the hospital for ten days and remained there convalescing for an additional eight days, from whence she was removed to her home. On account of her injuries, she was unable to work for two months.

While there is no set rule for awarding damages, and each case must be judged by the special circumstances attending it, and although the law clothes the trial judge with discretion in assessing damages in tort actions, yet there should be some uniformity. Joynes v. Toye Bros. Auto & Taxi-cab Co., 11 La. App. 124, 119 So. 446. After carefully considering all the evidence in the case, we have reached the conclusion that the award of $3,500 is excessive in the light of the cases of Dill v. Colley, 3 La. App. 310; Duvic v. Friedrichs & Dupas, 9 La. App. 394, 120 So. 494; Landry v. Checker Cab Co., 10 La. App. 723, 122 So. 912; Mutti v. McCall, 14 La. App. 504, 130 So. 229; Escalante v. Richard, 14 La. App. 579, 580, 130 So. 567. Without attempting to separate the items of damage for pain and suffering, physical and mental shock, nervousness, physical injury, and permanent disfigurement, we believe that the sum of $3,000 is adequate to cover these items, which, together with the amount of $635, which we have hereinbefore approved, makes a total of $3,635.

Counsel for defendant contended that the damages should be restricted to strict compensation, and was vicariously liable, as the defendant was a person in impecunious circumstances, citing Gallman v. Young, 6 La. App. 137; Thiel v. Shiff, 7 La. App. 582. The only evidence offered by defendant in this connection was his testimony to the effect that he was an engineer by occupation, had his own office, and worked for himself; that during the last six months he had earned a living for himself and his family, consisting of a wife and four children, but had not made expenses. However, the defendant does not say that he does not have any property, stocks, bonds, etc., and that he was in a poor or ordinary financial condition. Our learned brother below was of the opinion that a reasonable moneyed judgment would not be oner-

ous to the defendant, and, as this presents only a question of fact, i. e., the defendant's financial ability to respond in damages, we cannot say that his opinion in that respect was erroneous.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be amended by reducing the same from $4,135 to the sum of $3,635, and, as thus amended, it is affirmed.

JANVIER, J., dissenting. For two reasons I cannot concur in this decree:

First, because I think that the amount allowed is in excess of what is warranted by the facts and is considerably in excess of awards made in other cases for similar injuries; and

Second, because I believe that the judgment of a trial court on a question of amount in a tort action should neither be increased nor reduced, unless by a substantial amount.

A question of quantum is a question of fact. Loney v. High, 13 La. 271. The finding of a trial court on a question of fact should not be interfered with unless manifestly erroneous. Bobbs-Merrill Louisiana Digest, vol. IX, "Appeal," sec. 625.

If a judgment for $4,135 is manifestly erroneous because excessive, then a reduction of only $500 is only a step in the right direction, and falls far short of entirely correcting the error. I believe that a total award of $2,500 for all expenses and losses and injuries would be proper.

I therefore respectfully dissent.