## ANDERSON v. LOUISIANA POWER & LIGHT CO. et al.

### No. 1838.

Court of Appeal of Louisiana. First Circuit.

April 7, 1938.

S. S. Reid, of Amite, for appellants.

James H. Morrison, of Hammond, and L. B. Ponder, Jr., of Amite, for appellee.

DORE, Judge.

This suit grows out of an intersectional collision in the city of Hammond, on June 16, 1936, at about the hour of 7 o'clock a. m., between an automobile owned and operated by the plaintiff and an automobile owned by the defendant light company and operated by its employee, defendant Kelly.

The accident happened at the intersection of Church street, a paved and right of way street, running in an easterly and westerly direction, and Spruce street, a graveled street running ·at right angle to Church street. Plaintiff was traveling west on Church street, driving a coupé, and Kelly, accompanied by two other employees of the light company, was driving north on Spruce street on a mission for and in the interest of the defendant light company.

The negligence charged to the driver of the light company automobile, is: (1) His failure to stop as required by a city ·ordinance before entering Church street; (2) in driving at an excessive rate of speed; and (3) in failing to keep a proper lookout for traffic approaching on Church street. It is alleged that the automobile driven by Kelly struck plaintiff's car on the left side about two feet behind the front bumper, in a broadside manner, after plaintiff had reached the center of the intersection, breaking two of plaintiff's ribs, causing cuts and bruises on his face and body, breaking his eyeglasses, and. damaging his car, and for which damages he

244

claims the sum of $5,868.11, including medical fees and expenses.

Defendants admit that Kelly did not come to a complete. stop before entering Church street, but aver that he reduced the speed of his car to such an extent that he could have come to a stop instantly if necessary; they deny that Kelly was guilty of any negligence, but aver that the proximate cause of the accident was the negligence of plaintiff (1) in driving at an unlawful rate of speed, (2) in failing to see and heed the car driven by Kelly which entered the intersection first, and, if plaintiff did see the car driven by Kelly, (3) he was negligent in failing to turn to his left in order to pass the Kelly car which had passed beyond the center of the intersection to the north, thus having the last clear chance to avoid the accident. Defendants further aver that the car driven by plaintiff struck Kelly's car on the right side, practically at right angles, on the front right wheel and right front door. The light company included in its answer a reconventional demand for $90.34, damage to its car in the collision.

Judgment was rendered in favor of plaintiff and against the defendants in solido for $1,208.11. Defendants have appealed. The plaintiff has filed a motion in this court asking that the damages be increased.

This case presents purely a question of facts. There were four witnesses to the accident; plaintiff, defendant Kelly, and his two companions. The testimony of the plaintiff is that he was driving at a speed between 13 to 14 miles per hour, a speed within the limits as prescribed by the city ordinance; that he could not see down Spruce street to his left very far until near the intersection because of a lattice and some shrubbery on the corner; that he proceeded across the intersection, and had traversed more than two-thirds of the same, when the car driven by Kelly suddenly darted out of Spruce street at a rapid rate of speed and struck his car near the left door next to the steering wheel; that the impact took place in the northwest corner of the intersection. The testimony of the defendant Kelly and his two companions is to the effect that they were traveling at a rate of speed of not more than fifteen miles per hour; and that upon reaching the intersection, defendant Kelly reduced his speed to not over ten miles an hour, permitting him to stop within two feet if necessary; that defendant Kelly looked in both directions and saw plaintiff's car fully 250 to 300 feet away on Church street; that he proceeded across the intersection and traversed more than half of the same when plaintiff, traveling at a rapid rate of speed, ran into defendant's car on the right side, practically at right angles, on the front right wheel and right front door.

A highway policeman testified that a short time after the accident and while he was investigating the accident Kelly stated to him that he, Kelly, was driving 30 to 35 miles per hour at the time of the accident. Kelly denies making this statement, and he is corroborated in his denial by a Mr. Crockett who was with him in the car at the time of the accident. This policeman also testified that the front of plaintiff's car was not damaged; he is corroborated by a mechanic who inspected plaintiff's car. Plaintiff's car received the blow or impact at about the steering wheel, on the front left door. In any event, the extent of the impact on plaintiff's car, the sign left on the right front door of the defendant's car, coupled with the testimony of plaintiff as to the speed Kelly was making, lead to the conclusion that he was going more than ten miles per hour across this right of way street, and he could not stop his car within two or three feet as he states; and also that defendant's car ran into plaintiff's car as testified by plaintiff. The evidence shows that the collision occurred somewhat in the northwest corner of the intersection (at least northwest of the center), which indicates that defendant Kelly was either driving on his left side of Spruce street, or else that he turned his car to the left before striking plaintiff's car in an effort to avoid it. The latter theory being the more plausible, as the evidence shows that the power company's car was damaged on its right front side indicating that it was pulling to the left when it struck the front side of plaintiff's car. This situation also accounts for the fact that plaintiff's car was pushed in a northwesterly direction after the impact for some twenty five to thirty feet before it stopped against a post and tree, and the other car swerved around in the opposite direction, turning over on its right side.

The defendant Kelly admits that he did not bring his car to a stop before entering the right of way street, but merely reduced his speed to about ten miles per hour. He says, at that speed, he could have stopped in two or three feet; that he

proceeded across the intersection at this speed, only slightly picking up speed before the collision. If this part of his testimony is true, there is no reason why he could not have stopped before striking plaintiff's car in the intersection, as he could have seen plaintiff's car in plenty of time to stop within two or three feet.

The evidence shows clearly that Kelly, the driver of the company car, was negligent. In fact, his negligence does not seem to be seriously questioned in this court by counsel for defendants, as he seems to rely principally on the contributory negligence of plaintiff, thereby bringing this case within the case of McGehee v. Ashley, 18 La.App. 393, 137 So. 80, where the claim of plaintiff was denied because of his concurring negligence with that of the defendant. This leads us to the discussion as to whether plaintiff was negligent.

As previously stated, plaintiff says that he was coming out Church street at about 13 to 14 miles per hour; that he could not see down Spruce street to his left very far until near the intersection because of a lattice and some shrubbery on the corner; that the car driven by Kelly suddenly darted out of Spruce street at a rapid rate of speed and struck his car on the left side near the left door next to the steering wheel. Plaintiff had a right to assume that any one attempting to cross Church street would observe the traffic rules and accord him the right of way, and he had also a right to assume that a person intending to cross that street would stop or at least slow down so as to have his car under control before attempting to cross. Joseph Chalone Co. v. Smith, La.App., 158 So. 237; Blashfield Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 2, page 196, § 1028.

Plaintiff was under no duty to stop his car unless he saw or should have seen that the other car was driving at a reckless speed, or unless the other car had entered the intersection before he did and was proceeding across in a prudent and careful manner. But the record does not show that plaintiff saw or could reasonably have anticipated that the driver of the car would not slow down and accord plaintiff the right of way to which he was entitled. Nor is it shown that the defendant's car entered or pre-empted the intersection before plaintiff, as the evidence shows that plaintiff had

passed the center of the intersection when struck by the other car. Of course, if plaintiff was going at the excessive speed charged by defendants, he could have gotten beyond the center of the intersection when struck by the other car. That brings up the other and last point in the case; that is, the plaintiff's speed.

The defendant Kelly and the man sitting on the front seat with him testified that plaintiff was some 250 feet from the intersection when they reached the intersection; that plaintiff was coming at a rapid rate of speed; one of them says from 40 to 45 miles per hour. Kelly says that he thought he had ample time to cross before plaintiff reached the intersection. It is impossible to believe that plaintiff was 250 feet from the intersection when Kelly entered it, for Kelly did not have over 15 feet or so to go to reach the point of impact, while plaintiff was going 250 feet —that is to say, plaintiff would have had to travel some 16 or 17 times as fast as Kelly, and if Kelly was traveling only 10 miles per hour as he says, then plaintiff was traveling 160 to 170 miles per hour. This would be the speed of an airplane rather than that of an automobile.

The physical facts do not indicate that plaintiff was going at an excessive rate of speed. The car he was driving went only 25 to 30 feet after the impact. While the momentum of the car might have been checked some by striking a post, yet the sign made on the front of the car does not indicate that it was moving very fast. It is difficult to say whether or not plaintiff was driving slightly more or slightly less than fifteen miles per hour, the speed limit fixed by ordinance of the city. In any event, it does not appear that his rate of speed contributed to the accident. In view of the fact that the car driven by Kelly ran into plaintiff's car, it could not be said that a speed of five or ten miles per hour either over or under the speed limit could have been the cause of the accident, for the other car could just as well run into plaintiff going ten miles per hour as going twenty. In this respect the present case is different from the McGehee v. Ashley, supra, case, because in the latter case it was found that the speed of plaintiff's car was the very thing that brought about the accident. This case is more similar to the case of Cucchiara v. Siple, La.App., 153 So. 338, where defendant's negligence was held to be the sole and proximate cause of the accident.

There are numerous contradictions in the testimony of defendant Kelly and his witnesses. The lower court heard and saw the witnesses, and, from the conclusion he reached, he must have believed the evidence of plaintiff and discarded the evidence of defendants. Suffice it to say that he solved the questions of fact involved herein in favor of plaintiff, and we cannot say that he manifestly erred.

Plaintiff's principal injury was the fracture of two ribs which caused severe pain on account of an attack of pleurisy. He was under the treatment of a doctor for five or six weeks. There is a small scar over plaintiff's left eye, and this scar is permanent, but it is not very noticeable. The trial court allowed $1,000 for physical injuries plus the damage to plaintiff's car, doctor bill, and loss of his eyeglasses. This is a reasonable allowance. Certainly the amount should not be reduced, and we see no good reason to increase it.

For these reasons, the judgment appealed from is affirmed.